UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TERESA L. BOGGESS,

      Plaintiff,

v.                            Civil Action No. 2:23-cv-00651

POSITEC TOOL CORPORATION, t/a,
a/k/a, d/b/a POSITEC USA, INC.,
and WAL-MART STORES, INC.,

      Defendants.


MEMORANDUM OPINION AND ORDER


      Pending is defendant Wal-Mart Stores, Inc.'s ("Walmart"), Motion to Dismiss Plaintiff's Complaint, ECF No. 4; ECF No. 5 (memorandum in support), which is ORDERED dismissed inasmuch as plaintiff thereafter has filed an amended complaint, see ECF No. 17.  Pending now is Walmart's Renewed Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 18; ECF No. 19 (memorandum in support) (hereinafter "Renewed Mot."). Plaintiff timely filed a response to the Renewed Motion, ECF No. 25 ("Pl. Resp."), and Walmart replied, ECF No. 27 ("Walmart Reply").  The motion is fully briefed.

I.   Background

The following allegations are drawn from the plaintiff's Amended Complaint, ECF No. 17 ("Am. Compl."), and are regarded as true for the purposes of the Renewed Motion to Dismiss.

Plaintiff Teresa L. Boggess ("plaintiff" or "Boggess") resides in Mingo County, West Virginia.  Am. Compl. ¶ 1. Defendant Positec Tool Corporation d/b/a Positec USA, Inc. ("Positec") was and is a corporation registered in and with its principal place of business in North Carolina.  Id. ¶ 2. Positec "systematically conducts business in" West Virginia and "sells, distributes, and/or places hedge trimmers into the stream of commerce" in West Virginia.  Id. ¶ 3.  Defendant Wal-Mart Stores, Inc. ("Walmart") is a Delaware corporation with its principal place of business in Arkansas and which "sells, distributes, and/or places hedge trimmers into the stream of commerce" in West Virginia.  Id. ¶ 4.

At some point prior to October 3, 2021, plaintiff purchased a Hyper Tough HT10-401-002-02 20 3.7 Amp Electric Hedge Trimmer (hereinafter, the "hedge trimmer") from a Walmart store in Logan, West Virginia.  Id. ¶ 8.  The Hyper Tough hedge trimmer is "designed, manufactured, assembled, sold, and/or distributed" by Positec, allegedly "under the substantial

control of" Walmart.  Id. ¶ 9.  Plaintiff alleges that Positec advertises on its website that "when client corporations such as [Walmart], 'choose Positec as [their] private brand supplier,' those clients are able 'to tailor a complete line of power tools and outdoor equipment that meet the specific needs of their customers.'"  Id. ¶ 15 (quoting the Positec website without citation).

According to plaintiff, the "Hyper Tough" brand is a private brand of products "that is exclusively sold, marketed, and distributed to consumers by" Walmart.  Id. ¶ 10.  Indeed, plaintiff alleges that the "Hyper Tough" brand name is a "trademark owned by Walmart Apollo, LLC," which is a "wholly owned subsidiary of" Walmart.  Id. ¶ 11.  Walmart allegedly commissions and "exercises and maintains substantial control over" the "design, manufacture, and assembly" of its "proprietary Hyper Tough range of products" through various manufacturers, including Positec.  Id. ¶ 12, 13.  Plaintiff alleges that Walmart exercises such control "in order to create a line of tools that will meet certain cost, functionality, and quality standards that [Walmart] deems to be attractive to its consumers, profitable for [Walmart], and suitable to represent [Walmart's] exclusive Hyper Tough brand name in the marketplace."  Id ¶ 14.

Walmart "extensively markets its Hyper Tough" line of tools to its customers as "trustworthy," using the slogan "Hyper Tough tools[:] Find everything you need from a brand you trust." Id. ¶ 17.  Specifically, the hedge trimmer model at issue in this matter "is exclusively sold, marketed, and distributed by" Walmart, which "commissioned, directed, and substantially controlled" the hedge trimmer's "design, manufacture, and assembly."  Id. ¶ 18.  The hedge trimmer was marketed by defendants Walmart and Positec "as safe for the non-professional home use, stating, inter alia, that it has a 'Dual safety trigger design so this trimmer only activates when you mean for it to.'"  Id. ¶ 27 (source of marketing language unspecified).

Hyper Tough tools, including the hedge trimmer, "are marketed under the trademarked Hyper Tough brand, and do not clearly disclose that there is any company involved in their design, manufacture, or assembly other than Hyper Tough."  Id. ¶ 16.  There was "no apparent disclosure . . . that Positec participated in the manufacture of the hedge trimmer."  Id. ¶ 18.  The court notes that, as acknowledged by plaintiff earlier in her complaint, Hyper Tough is a trademark allegedly owned by a Walmart subsidiary and is not a company.  See id. ¶ 11.

On October 3, 2021, plaintiff was "properly operating the hedge trimmer with all due care and attention" while trimming small shrubs on her residential property.  Id. ¶ 19.

After a "thin shrub branch" lodged in the hedge trimmer, its blades "ceased moving."  Id. ¶ 20.  Plaintiff then "released the hedge trimmer's operating button, properly turning" it off, and set it down.  Id.  Plaintiff alleges she "[did] everything to safely power off and disengage the hedge trimmer in accordance with the instructions," and, with the "hedge trimmer off, motor silent, and the blades motionless," plaintiff proceeded to "manually remove the shrub branch lodged within the blades." Id. ¶ 21.  When plaintiff removed the shrub branch, "the hedge trimmer suddenly and unexpectedly reengaged with the blades moving."  Id.

As a result, plaintiff "suffered severe cuts and lacerations to her nerves and tendons in three of her fingers on her left hand, requiring emergency care, subsequent surgeries, and extensive physical therapy."  Id. ¶ 22.  Plaintiff alleges she suffered various economic and noneconomic damages.  Id. ¶ 23.

On February 18, 2022 — after plaintiff was injured and Walmart "was notified of her injury" — an agent of "Wal-mart, Positec, [and/or] their insurance carrier(s) . . . came to Ms. Boggess' home and took possession of the hedge trimmer."  Id. ¶ 39.  Plaintiff had not yet retained counsel or "ha[d] a qualified independent expert inspect, test, and document the condition of the hedge trimmer."  Id.

On September 28, 2023, plaintiff filed her original complaint.  ECF No. 1.  Defendant Walmart timely filed its original motion to dismiss, arguing that West Virginia's Innocent Seller Statute, W. Va. Code § 55-7-31, barred plaintiff's suit against it.  ECF No 4, 5.  After that motion was fully briefed, plaintiff filed a motion for leave to amend her complaint, ECF No. 11, which was unopposed.  The court granted plaintiff's motion for leave to amend and ordered her Amended Complaint be contemporaneously entered, ECF No. 16 (order), ECF No. 17 (Amended Complaint).  As in her original complaint, plaintiff's Amended Complaint alleges four counts: Count I, "Strict Products Liability as to All Defendants"; Count II, "Strict Liability – Failure to Warn as to All Defendants"; Count III – "Negligence as to All Defendants"; and Count IV – "Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose as to All Defendants."  Am. Compl. ¶ 40-73.

Defendant Walmart timely filed its Renewed Motion to Dismiss Plaintiff's Amended Complaint, again only contending that plaintiff's suit against Walmart is barred by West Virginia's Innocent Seller Statute, W. Va. Code § 55-7-31, and must thus be dismissed under Rule 12(b)(6).  In the Renewed Motion, Walmart alternatively "requests" that if the court denies the motion, the court "permit only limited discovery as

to Walmart with respect to the narrow exception(s) to the Innocent Seller Statute."  Renewed Mot. 10.

## II.  Applicable Law

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007).  A party may test the sufficiency of a pleading by moving under Rule 12(b)(6) to dismiss it for "failure to state a claim upon which relief can be granted."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2006).

In order to defeat a 12(b)(6) motion, a complaint must contain "enough facts to state a claim that is plausible on its face."  Twombly, 550 U.S. at 570.  The court, at this early stage, "must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56).  Further, all reasonable inferences are drawn in favor of the plaintiff.  E. I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011) (citing Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009)).  "Although for the purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

### III.   Discussion

Walmart's sole argument in their Renewed Motion is that plaintiff has failed "to state a claim upon which relief can be granted because [West Virginia's] Innocent Seller Statute prohibits the product liability claims asserted against Walmart in this case."  Renewed Mot. 5.  Specifically, Walmart contends that the Amended Complaint fails to establish that Walmart can be held liable under two potentially relevant exceptions to the Innocent Seller Statute, W. Va. Code §§ 55-7-31(b)(2), (9), and that the Amended Complaint must thus be dismissed.  Plaintiff does not dispute that the Innocent Seller Statute applies in this matter.  See generally Pl. Resp.

### a.   Innocent Seller Statute

In 2017, West Virginia enacted an "Innocent Seller" statute, which its sponsors intended to "limit[] product liability action against seller (sic) other than the manufacturer of the product except in certain circumstances." West Virginia House Journal, 2017 Reg. Sess. 3/8/2017.  The Innocent Seller statute establishes that "[n]o product liability

8

action shall be maintained against a seller unless" one or more

of thirteen exceptions applies.  W. Va. Code § 55-7-31(b); see

Canterbury v. FCA US LLC, 2:21-cv-00017, 2021 WL 1032307, *2

(S.D.W. Va. Mar. 17, 2021).

> The statute defines a "product liability action" as:
>
> [A]ny civil action brought against a manufacturer or seller of a product, based in whole or in part on the doctrine of strict liability in tort, for or on account of personal injury, death or property damage caused by or resulting from:
>
> > (A) The manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, marketing or sale of a product;
> >
> > (B) The failure to warn or protect against a danger or hazard in the use, misuse or unintended use of a product; or
> >
> > (C) The failure to provide proper instructions for the use of a product.

§ 55-7-31(a)(4).  The statute defines "seller" as "a wholesaler,

distributor, retailer, or other individual or entity, other than

a manufacturer, that is regularly engaged in the selling of a

product whether the sale is for resale by the purchaser or is

for use or consumption by the ultimate consumer."  § 55-7-

31(a)(5).  The Amended Complaint, "clearly implicates the

Innocent Seller [S]tatute" because plaintiff has brought two

claims of strict product liability, Am. Compl. ¶ 40-54, against

Walmart, an undisputed seller under the statute.  <u>Canterbury</u>,

2021 WL, *2.

The statute "prohibits a cause of action against a

seller of a product except in thirteen narrow circumstances."

<u>Id.</u>; <u>see</u> § 55-7-31(b).  Of these, Walmart contends that only the

following two exceptions apply in this matter:

> (b)  No product liability action shall be
> maintained against a seller, unless:
>
> * * *
>
> > (2)  The seller exercised substantial
> > control over the aspect of the
> > manufacture, construction, design,
> > formula, installation, preparation,
> > assembly, testing, labeling, warnings or
> > instructions of the product that was a
> > proximate cause of the harm for which
> > recovery is sought;
>
> * * *
>
> > (9) The seller repackages the product or
> > has placed his or her own brand name or
> > label on the product: Provided, That this
> > does not include a seller, who is not
> > otherwise a manufacturer, who:
> >
> > > (1)  Did not exercise substantial
> > > control as described in subdivision
> > > (2) of this subsection; and
> > >
> > > (2)  Discloses the identity of the
> > > actual manufacturer of the product.

§ 55-7-31(b).  Though plaintiff implies that other exceptions

may apply, plaintiff does not affirmatively argue how any do.

<u>See</u> Pl. Resp. 6 ("At this early stage in the litigation . . . at

least two of these statutorily enumerated situations clearly appear to apply in this action, and have been pleaded in the Amended Complaint."). Accordingly, the court only addresses whether plaintiff has stated a claim under § 55-7-31(b)(2) or (9).

Inasmuch as § 55-7-31(b)(9) implicates § 55-7-31(b)(2), in order for plaintiff to state a claim under both, plaintiff must plead that Walmart exercised "substantial control" as described in § 55-7-31(b)(2). See § 55-7-31(b)(2), (9). Further, to state a claim under § 55-7-31(b)(9), plaintiff must additionally plead that Walmart "repackages the product or has placed [its] own brand name or label" thereon and that Walmart did not "[d]isclose the identity of the actual manufacturer of the product." Id. at (9).

b.   Substantial Control - § 55-7-31(b)(2)

Both exceptions at issue in this motion apply only if "[t]he seller exercised substantial control over the aspect of the manufacture, construction, design, formula, installation, preparation, assembly, testing, labeling, warnings or instructions of the product that was a proximate cause of the harm for which recovery is sought."

In its Renewed Motion, Walmart contends that the Amended Complaint alleges only "in a conclusory fashion" that Walmart exercised "substantial control over the manufacture and design of the product at issue," and that the Amended Complaint failed entirely to allege that "Walmart exercised substantial control over the aspect of the manufacture or design of the Hedge Trimmer that was a proximate cause of Plaintiff's harm." Renewed Mot. 7 (emphasis in original).  Walmart acknowledged that the Amended Complaint alleges that Walmart establishes certain quality standards for the hedge trimmer, uses the Hyper Tough brand, and owns the trademark rights of the Hyper Tough brand.  Id.  Nonetheless, because the dual safety trigger design is "the only factual design or manufacture issue that the Amended Complaint identifies," Walmart argues that plaintiff has failed to state a claim because the Amended Complaint fails to allege that Walmart exercised significant control over its design or manufacture.  Id.

In response, plaintiff rebuts Walmart's argument in three ways.  First, plaintiff contends that she "specifically alleged Walmart exercised substantial control over the entire production of the hedge trimmer from inception to sale," as supported by Positec's representation that its corporate clients

12

enjoy such granular level of control.  Pl. Resp. 7 (emphasis in
original).

        Second, plaintiff notes that, though the "[d]ual
safety trigger design" was the only identified feature, she has
not alleged that it "is the only aspect of the hedge trimmer
manufacture and design that proximately caused her injuries."
Id. at 8.  Rather, plaintiff contends that "at this early stage
in the litigation . . . [p]laintiff is not in a position to know
of all the ways in which" the hedge trimmer "fell short of
minimum standards" in a manner that proximately caused her
injuries.  Id. at 8-9.  The court notes that plaintiff mentioned
the dual safety design to demonstrate that defendants advertise
the hedge trimmer as safe for home use, not to plead that the
dual safety design (or manufacture thereof) proximately caused
plaintiff's injury.  See Am. Compl. ¶ 27.  Indeed, the complaint
alleges that the proximate causes of plaintiff's injury include
defendants' actions that caused the hedge trimmer to be
"defective and unreasonably dangerous," defendants' negligence,
defendants' failure to warn or properly instruct, and
defendants' breach of warranties.  Am. Compl. 42-45 (defective
condition of hedge trimmer was proximate cause of injury); see
id. ¶ 54 (failure to warn and properly instruct was proximate

cause), ¶ 65 (defendant's negligence was proximate cause), ¶ 73
(breaches of warranties was proximate cause).

Third, plaintiff argues that Walmart "entirely
ignore[d]" allegations that Walmart's failure to "provide
adequate warnings and instructions" was a proximate cause of her
injuries, and that § 55-7-31(b) specifically provides that
substantial control over "labeling, warnings or instructions"
can provide a basis for seller liability.  Id. at 9 (quoting §
55-7-31(b)(2)).

Walmart's reply essentially restates the arguments
stated in its motion.  See generally Walmart Reply.  In doing
so, Walmart, without citing to authority, seeks to impress upon
the court that establishing substantial control is a "heavy
requirement" that requires more than "[l]imited control," though
Walmart does not cite to any authority articulating the meaning
of substantial control in this context.  Id. at 3.

Neither party has identified West Virginia law or
precedent defining "substantial control" as used in the Innocent
Seller Statute.  Because the court is sitting in diversity, its
"role is to apply the governing state law, or, if necessary,
predict how the state's highest court would rule on an unsettled
issue."  Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co., 514
F.3d 327, 329 (4th Cir. 2008).  Given the recency of West

14

Virginia's Innocent Seller Statute, it appears that its courts have not had occasion to pass upon the meaning of "substantial control" in this statute.  Nonetheless, other states have had Innocent Seller statutes with the same language on the books for a longer period of time, and the interpretation of such laws is guiding here.  See State v. Hulbert, 544 S.E.2d 919, 930 (W. Va. 2001) (relying upon other state courts' interpretation of identical statutory language with respect to analyzing the necessary elements to prove wanton endangerment involving a firearm, W. Va. Code § 61-7-12).

In Scruggs v. Walmart Inc., No. 1:21-CV-145, 2023 WL 4777907 (E.D. Tenn. July 26, 2023), at the summary judgment stage, the court found that Walmart had exercised "substantial control" over a product produced by another company under Tennessee's Innocent Seller Statute, Tenn. Code Ann. § 29-28-106(1), where Walmart's attorneys reviewed product labels, Walmart engaged in quality assurance testing of the products, and Walmart imposed certain performance standards.  2023 WL, at *2-3.  Interpreting the Mississippi Innocent Seller Statute, which has an express purpose of "immuniz[ing] sellers who are not actively negligent, but are instead mere conduits of a product," Miss. Code Ann. § 11-1-63(h) (Supp. 2008), a federal court found that a seller did not exercise "substantial control"

over the manufacture of a product where it "requested that the
manufacturer put its stock number on the package," requested
that the manufacturer "paint the [products] red," asked the
manufacturer to adhere to federal standards, and accepted
certificates indicating the manufacturer ran certain tests.
Cockrell v. Peerless Chain Co., No. CIV.A.3:06CV521DPJJC, 2009
WL 2176899, at *2 (S.D. Miss. July 21, 2009).

Here, plaintiff has pled facts that give rise to a
reasonable inference that Walmart exercises control over the
Hyper Tough hedge trimmer more like the seller in Scruggs than
that in Cockrell.  Plaintiff has alleged more than that Walmart
merely directed the color of the hedge trimmer or ask for it to
satisfy regulatory minimums.  Plaintiff has specifically pled
that Walmart ensures that the Hyper Tough tools — which Walmart
allegedly specifically and exclusively commissions, Am. Compl. ¶
18 — adhere to "certain cost, functionality, and quality
standards that Wal-Mart deems to be attractive to its customers,
profitable for Wal-Mart, and suitable to represent Wal-Mart's
exclusive Hyper Tough brand name in the marketplace."  Am.
Compl. 15.  Further, the complaint alleges that Walmart controls
the labelling and advertising of this product.  Id. ¶ 27.  And
plaintiff has pled that Walmart "failed to provide adequate
warnings" — either "on the hedge trimmer itself" or otherwise —

of the substantial danger created by the hedge trimmer" when
users "attempt[] to manually dislodge obstructions." Id. ¶¶
31-32.

Plaintiff has further alleged that each of the above
Walmart-controlled aspects of the manufacture or design of the
hedge trimmer was among the proximate causes of her injury. See
id. ¶ 42-45 (defective condition of hedge trimmer was proximate
cause of injury); ¶ 54 (failure to warn and properly instruct
was proximate cause); ¶ 59, 65 (defendant's negligence was
proximate cause); ¶ 73 (breaches of warranties were proximate
cause). Plaintiff has thus pled facts that give rise to a
reasonable inference that defendant had "substantial control"
over the aspects of the hedge trimmer that she alleges
proximately caused her injury. Accordingly, the court finds
that plaintiff has adequately pled the Innocent Seller Statute
exception in § 55-7-31(b)(2).

c. Repackages the Product - § 55-7-31(b)(9)

To plead that the exception established by § 55-7-
31(b)(9) applies, plaintiff must allege that defendant not only
meets the § 55-7-731(b)(2) definition of "substantial control,"
but also that defendant "repackages the product or has placed
[its] own brand name or label on the product" and does not

17

"[d]isclose[] the identity of the actual manufacturer of the product."  § 55-7-31(b)(9).

Defendant does not contend that plaintiff has failed to adequately plead that it "repackages" the hedge trimmer or "places [its] own brand name or label on the product."  See Renewed Mot. 4 (impliedly admitting that it is a seller who "repackages or place[s] [its] own brand on the" hedge trimmer); Walmart Reply 3 (admitting plaintiff alleged Walmart "repackage[ed] and retail[ed]" the hedge trimmer under its "Hyper Tough" trademark).  Accordingly, for purposes of this motion to dismiss, the court considers this aspect of the exception satisfied.


   d.   Disclosure of Identity of Manufacturer - § 55-7-31(b)(9)

Defendant contends that plaintiff failed to sufficiently plead that it did not disclose the identity of the actual manufacturer of the product.  Renewed Mot. 7-8.  Though defendant acknowledges that plaintiff has pled that defendant "d[id] not clearly disclose" the manufacturer of the hedge trimmer, defendant argues that the statute nonetheless protects a seller who "[d]iscloses" the identity of the manufacturer at all, seemingly arguing that the disclosure can be as inconspicuous as possible and remain sufficient to protect a

seller under the Innocent Seller Statute.  Id. at 8.
Alternatively, defendant argues that plaintiff "did not and
cannot" assert that defendant did not disclose the identity of
the manufacturer "because Walmart did disclose the identity of
the manufacturer of the [h]edge [t]rimmer when the Plaintiff
contacted Walmart after the subject incident."  Id.

        First, plaintiff not only pled that the Hyper Tough
tools "do not clearly disclose" that they are manufactured by
Positec, but she also pled that the hedge trimmer was "branded
and labeled as a Hyper Tough product, with no apparent
disclosure to Ms. Boggess or other consumers that Positec
participated in the manufacture of the hedge trimmer."  Am.
Compl. ¶16, 18.  The court finds that this is sufficient to
state a claim that defendant Walmart did not "[d]isclose[] the
identity of the actual manufacturer of the" hedge trimmer.
§ 55-7-31(b)(9)(B).

        Second, Walmart's argument that it disclosed that
Positec manufactured the hedge trimmer after plaintiff's injury
is similarly unavailing.  As an initial matter, Walmart's claim
that it did so is not stated or referred to in the Amended
Complaint, so the court cannot consider it at this stage.  See
Harrell v. Freedom Mortg. Corp., 976 F.3d 434, 439 n.5 (4th Cir.
2020) (holding a court cannot consider extrinsic evidence at the

motion to dismiss stage unless the complaint references such evidence).  The court is also doubtful that such after-the-fact disclosure would shield defendant Walmart under the statute: § 55-7-31(b)(9) clearly contemplates actions by the seller prior to or at the time of sale.  The statute protects sellers who act as mere conduits, not sellers who, as plaintiff has alleged of Walmart with respect to the hedge trimmer, place their own brand name on a product, exercise specified "substantial control" over it, and only after injury disclose the actual manufacturer.  See McNair v. Johnson & Johnson, 818 S.E.2d 852, 866 (W. Va. 2018). The Innocent Seller Statute does not protect those who, as plaintiff has alleged of Walmart with respect to the hedge trimmer, exercise specified "substantial control" over a product.

Accordingly, because plaintiff has adequately pled that defendant Walmart exercised "substantial control" over the hedge trimmer under § 55-7-31(b)(2), and that Walmart repackaged or placed its own branding upon the hedge trimmer and did not disclose the identity of the manufacturer under § 55-7-31(b)(9), she has stated a claim that Walmart is not entitled to immunity under the Innocent Seller Statute inasmuch as she has adequately alleged that the exceptions found in § 55-7-31(b)(2) and (b)(9)

apply.

IV.  Walmart's Request to Limit Discovery

At the end of the Renewed Motion, Walmart "requests" that if the court denies its Renewed Motion, the court limit discovery to the questions of "whether Walmart exercised substantial control over the manufacture, construction, design, etc. of" the hedge trimmer or whether "Walmart disclosed the identity of the manufacturer of the" hedge trimmer.  Renewed Mot. 10.  Plaintiff did not respond to this request, which Walmart reiterated in its reply.  See Pl. Resp., Walmart Reply.

Inasmuch as this request is tantamount to a request to bifurcate this matter into one phase to determine whether the Innocent Seller Statute exceptions apply to Walmart and a later phase to determine all other issues, the court declines to grant it.

IV. Conclusion

For the foregoing reasons, Walmart's Renewed Motion to Dismiss Plaintiff's Amended Complaint is DENIED, and Walmart's initial Motion to Dismiss Plaintiff's Complaint is DENIED AS MOOT.

Because the court stayed discovery in this matter until the resolution of the Renewed Motion, the court will enter a new scheduling order to govern the rest of this case.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: May 23, 2024

John T. Copenhaver, Jr.
Senior United States District Judge